JOSHUA L. BRUNO AND JANICE BRUNO

VERSUS

CDC AUTO TRANSPORT, INC., ESPERANZA, INC., TONY DOE AND JOHN DOE

* NO. 2019-CA-1065

*

* COURT OF APPEAL

*

FOURTH CIRCUIT

*

STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-12113, DIVISION "A"
Honorable Ellen M Hazeur, Judge
* * * * * *
**Judge Regina Bartholomew-Woods**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Regina Bartholomew-Woods)

Thomas A. Robichaux
1317 Milan Street
New Orleans, LA 70115

Henry Minor Pipes, III
Patrick J. Lorio
PIPES MILES BECKMAN, L.L.C.
1100 Poydras Street, Suite 1800
New Orleans, LA 70163

    COUNSEL FOR PLAINTIFF/APPELLANT


Imtiaz A. Siddiqui
IAS LAW LLC
900 Camp Street, Suite 435
New Orleans, LA 70130

    COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**
**JUNE 3, 2020**

*RBW*

*RLB*

*RML*

The instant appeal involves a contractual provision as to venue. Because Appellee failed to raise a declinatory exception of improper venue prior to or along with the motion to set aside the preliminary default, as contemplated by La. C.C.P. art. 928, Appellee waived this exception.

## FACTUAL BACKGROUND

Plaintiffs-Appellants, Joshua Bruno and his mother Janice Bruno ("Appellants"), are residents of New Orleans, Louisiana. Plaintiffs-Appellants purchased a 2007 Mercedes C-300 sedan ("the vehicle") from a car dealership in Bangor, Maine for Janice Bruno. Subsequent to the purchase of the vehicle, Mr. Bruno placed a solicitation on a website, UShip.com, in order to have a shipping company deliver the vehicle to Mr. Bruno's residence in New Orleans. UShip.com connected Mr. Bruno to the bid winner—CDC Auto Transport, LLC ("CDC").

1

Thereafter, Mr. Bruno entered into an agreement with CDC to ship the vehicle and paid CDC a deposit in the amount of one hundred dollars ($100.00).[1] Mr. Bruno further agreed to pay one thousand three hundred-fifty dollars ($1,350.00) as a fee for delivery of the vehicle.

At this point, the parties' versions of events differ significantly. Mr. Bruno alleges that "without [his] knowledge or consent" CDC subcontracted the shipping of the vehicle to Defendant-Appellee, Esperanza, Inc. ("Esperanza"). Esperanza is a Massachusetts transportation services corporation with its principal place of business in Hampden County, Massachusetts. Contrarily, on or before October 8, 2018, Esperanza alleges that its dispatcher spoke to Mr. Bruno, via telephone. During said telephone conversation, Esperanza asserts that Mr. Bruno was specifically made aware of it being the subcontractor of CDC and in charge of the shipping. According to Mr. Bruno, prior to the delivery of the vehicle to New Orleans, he never spoke with anyone from Esperanza.

However, Esperanza asserts that during the telephone conversation, Mr. Bruno was informed that delivery could be made at any time and that payment was due at the time of delivery. More importantly, Esperanza asserts that it made Mr. Bruno aware of a Bill of Lading and its accompanying Terms and Conditions,[2] which included a forum selection clause[3] that stated that all litigation or legal

---

[1] The record before us, as well as the facts, as presented by both Appellants and Appellee—Esperanza, Inc., do not indicate that any other deposits or monies were paid to CDC or any other entity.

[2] Paragraph 3 of the Bill of Lading Terms and Conditions states: "No delivery time is guaranteed. … There are absolutely no guarantees made, express[] or implied, regarding delivery times or dates."

2

action must be initiated in state court in Hampden County, Massachusetts. On October 8, 2018, at the time the vehicle was picked up, Esperanza alleges that Mr. Bruno's "authorized representative" was presented with the Bill of Lading and Terms and Conditions[4]; that Mr. Bruno's authorized representative was afforded the opportunity to review the document and retained a copy; and that Mr. Bruno's authorized representative signed the Bill of Lading.

Contrarily, Mr. Bruno asserts that he was never made aware of the Bill of Lading nor of its Terms and Conditions. He further states that the Bill of Lading presented by Esperanza may not even be an authentic document because the customer's signature is illegible, there is no printed customer's name, and the document is not dated; moreover, he claims that it is impossible to determine who signed the Bill of Lading.

It is undisputed that the vehicle was placed on a transport and sent to New Orleans by an Esperanza driver. Esperanza designated "Tony"[5] as a driver to deliver the vehicle. When Tony was several hours away from New Orleans, he text-messaged Mr. Bruno that he would be arriving during the early hours of the morning, at approximately 1:00 a.m., and that Mr. Bruno would need to leave his house and meet him near Interstate-10, as opposed to having the vehicle dropped off to him at his home. Mr. Bruno, who states that he is a single father, was

---

[3] Paragraph 23 of the Bill of Lading Terms and Conditions states: ". . . All claims, subrogation, litigation, or legal action must have right of venue in the State of Massachusetts, County of Hampden, in the municipal court."

[4] Paragraph 35 of the Bill of Lading Terms and Conditions states: "Esperanza, Inc. (Transporter) is not responsible if the customer didn't read current contract carefully or at all. (NO Exceptions)."

[5] The record before this Court is devoid of "Tony's" last name.

unprepared to accept delivery of the vehicle at that time because he did not want to leave his young children home alone; he relayed this information to "Tony." Mr. Bruno asserts that he immediately contacted CDC—the entity with which he contracted—about the delivery issue and CDC assured him that the driver would wait until normal business hours, and deliver the vehicle for the same flat price of $1,350.00. According to Esperanza, however, the driver waited for several hours and was entitled to an additional fee for the resulting wait time, in accordance with its Terms and Conditions.

The next morning, after several attempts to contact Tony, Mr. Bruno alleges that he finally received two messages from Tony advising him that he was at the corner of Claiborne Avenue and Octavia Street. Tony requested that Mr. Bruno meet him there with the shipping cost and an additional three hundred-fifty dollars ($350.00)[6], or else, the vehicle would be returned to Massachusetts. When Mr. Bruno arrived on-site, Esperanza asserts and Mr. Bruno agrees that he refused to pay the additional fee (as stated in the Terms and Conditions) for the resulting wait time. Consequently, Tony refused to release possession of the vehicle and Esperanza was unable to consummate delivery. As a result, Esperanza, pursuant to the Terms and Conditions, retained possession of the vehicle. Mr. Bruno asserts

---

[6] Paragraph 16 of the Terms and Conditions states:

> All payments for transporter must be in the form of CASH or MONEY ORDERS… . If these terms are not met by the customer then the vehicle will be stored at the customer[']s expense. And while we wait for the funds the customer will be charged $50 per every hour from the time of delivery.

that Esperanza or Tony, or both, have secreted the vehicle since the date that delivery was supposed to have been consummated.

## PROCEDURAL HISTORY

On December 4, 2018, Appellants filed a petition for damages against CDC; Esperanza; Tony Doe, the driver for Esperanza; and John Doe, Esperanza's secondary driver. Appellants alleged that Defendants were jointly, severally, and *in solido* liable to them for damages, including the full and complete value of the vehicle. On February 18, 2019, Esperanza was served with the petition *via* the Long Arm Statute through a commercial courier on its agent. On March 28, 2019, Appellants filed a motion for preliminary default against CDC and Esperanza due to their failure to respond to the petition within the time delays provided by law. La. C.C.P. art. 1701.[7] Also, Appellants simultaneously filed the affidavit of service

---

[7] La. C.C.P. art. 1701 provides:

A. If a defendant in the principal or incidental demand fails to answer or file other pleadings within the time prescribed by law or by the court, a preliminary default may be entered against him. The preliminary default may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court, but the preliminary default shall consist merely of an entry in the minutes.

B. When a defendant in an action for divorce under Civil Code Article 103(1), by sworn affidavit, acknowledges receipt of a certified copy of the petition and waives formal citation, service of process, all legal delays, notice of trial, and appearance at trial, a preliminary default may be entered against the defendant the day on which the affidavit is filed. The affidavit of the defendant may be prepared or notarized by any notary public. The preliminary default may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court, but the preliminary default shall consist merely of an entry in the minutes. Notice of the entry of the preliminary default is not required.

into the record and on the same date, the trial court signed the order granting a preliminary default.

In response, Esperanza filed a motion and incorporated memorandum to set aside or vacate the preliminary default, arguing that the preliminary default was premature because Appellants failed to comply with the procedural requirements outlined in La. R.S. 13:3205.[8] Subsequently, on April 24, 2019, Esperanza filed an *ex parte* motion for extension of time to file a responsive pleading to the petition.[9] The trial court granted the motion, extending the deadline for a response until May 29, 2019. Subsequently, on May 29, 2019, Esperanza filed a declinatory exception of improper venue. On July 23, 2019, Appellants filed a motion to continue the hearing on the exception, which was reset to September 27, 2019. Appellants also filed a memorandum in opposition to the exception of improper venue on

---

[8] La. R.S. 13:3205 provides:

No preliminary default or final default judgment may be rendered against the defendant and no hearing may be held on a contradictory motion, rule to show cause, or other summary proceeding, except for actions pursuant to R.S. 46:2131 et seq., until thirty days after the filing in the record of the affidavit of the individual who has done any of the following:

(1) Mailed the process to the defendant, showing that it was enclosed in an envelope properly addressed to the defendant, with sufficient postage affixed, and the date it was deposited in the United States mail, to which shall be attached the return receipt of the defendant.

(2) Utilized the services of a commercial courier to make delivery of the process to the defendant, showing the name of the commercial courier, the date, and address at which the process was delivered to the defendant, to which shall be attached the commercial courier's confirmation of delivery.

(3) Actually delivered the process to the defendant, showing the date, place, and manner of delivery.

[9] On May 10, 2019, a final default judgment was issued against CDC in favor of Appellants for the following: full replacement value of the vehicle ($60,000), return of all monies paid to CDC ($100), compensation for mental anguish and suffering including compensation for deprivation of the use and enjoyment of Plaintiff's property ($100,000), attorneys' fees ($15,000), and reimbursement of all court costs and fees. CDC has never filed a motion for new trial nor appealed this final default judgment.

September 18, 2019. Esperanza filed a reply memorandum in further support of its exception of improper venue on September 25, 2019.

A hearing on the exception was held on September 27, 2019, and the trial court rendered a judgment on October 1, 2019, maintaining Esperanza's declinatory exception of improper venue while dismissing Appellants' claims without prejudice. Subsequently, Appellants filed a motion and order for suspensive appeal on October 3, 2019, from the trial court's maintenance of the exception of venue.

## DISCUSSION[10]

Appellants appeal the trial court's judgment maintaining Esperanza's declinatory exception of improper venue, asserting that: 1) Esperanza waived its right to contest venue by making a general appearance on April 9, 2019; and 2) Esperanza's Terms and Conditions contained in the Bill of Lading are invalid and unenforceable.

## STANDARD OF REVIEW

This Court has held that "[e]xceptions of improper venue are reviewed using the *de novo* standard of review, as venue is a question of law." *Matthews v. United Fire & Casualty Insurance Company Doctor Pipe, Inc.*, 2016-0389, p. 3 (La. App. 4 Cir. 3/8/17), 213 So.3d 502, 505. We are allowed to "render judgment on the

---

[10] As an initial matter, Esperanza, relying on *Yell v. Sumich*, 2008-0296, p. 2 (La. App. 3 Cir. 10/15/08), 997 So.2d 69, 72, asserts that an application for supervisory writ, as opposed to an appeal was the appropriate vehicle for review of the trial court's decision to grant an exception of improper venue. We find that *Yell* is distinguishable from the instant matter. In *Yell*, the judgment was interlocutory because the matter did not conclude; rather, the trial court transferred to the matter to a different parish. However, in the instant matter, the trial court dismissed the matter and there are no other matters pending before the trial court. Thus, in accordance with La. C.C.P. art. 2083, we find that the judgment maintaining the exception of venue in this matter is a final appealable judgment subject to our appellate review, as opposed to our supervisory jurisdiction.

7

record without deference to the legal conclusions of the [trial court]." *Land v. Vidrine*, 2010-1342, p. 3 (La. 3/15/11), 62 So.3d 36, 39 (quoting *Louisiana Municipal Association v. State*, 04–0227, pp. 35–36 (La. 1/19/05), 893 So.2d 809, 836–37).

## ANALYSIS

Louisiana Code of Civil Procedure article 44(C) provides:

> Except as otherwise provided in this article or by other law, any objection to the venue, including one based on any article in this Chapter, is waived by the failure of the defendant to plead the declinatory exception timely as provided in Article 928.

Further, La. C.C.P. art. 928 provides:

> The declinatory exception and the dilatory exception shall be pleaded prior to or in the answer and, prior to or along with the filing of any pleading seeking relief other than entry or removal of the name of an attorney as counsel of record, extension of time within which to plead, security for costs or dissolution of an attachment issued on the ground of the nonresidence of the defendant, and in any event, prior to the confirmation of a default judgment….

Appellants argue that Esperanza's motion and order to set aside or vacate the preliminary default is not one of the enumerated pleadings listed in La. C.C.P. art. 928, and therefore, Esperanza's motion constituted a general appearance. Further, Appellants contend that because Esperanza filed its declinatory exception of improper venue subsequent to making a general appearance, Esperanza waived its right to object/contest the venue in the instant action. We agree.

8

In support of its contention, Esperanza erroneously focuses on the trial court's interpretation,[11] as well as its own regarding La. C.C.P. art. 928 wherein the trial court stated: "[S]o long as a declinatory exception is pled prior to the signing of the final default judgment, the exception is timely and not waived." However, the problem with this analysis is that it completely ignores the other, pertinent, provision of the article that specifically mandates that a declinatory exception (of venue) must be plead "prior to or along with the filing of any pleading seeking relief."

In the instant case, the "motion to set aside the default judgment" irrespective of the reason, sought relief, i.e., the dismissal of the preliminary default judgment. The provisions of La. C.C.P. art. 928 specifically mandate that a declinatory exception must be plead prior to a pleading seeking relief. Further, "[t]he interpretation of a statute starts with the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature." *Land,* 2010-1342, p. 3, 62 So.3d at 39 (quoting *Louisiana Municipal Association,* 04–0227, pp. 35–36, 893 So.2d 809, 836–37) and citing La. C.C. art. 9. We find La. C.C.P. art. 928 to be clear and

---

[11] It is a "'well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *Wooley v. Lucksinger*, 2009-0571, 2009–0584, 2009–0585, 2009–0586, p. 77 (La. 4/1/11), 61 So.3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 2007-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671). However, a court of appeal may review the trial court's reasons for judgment to "gain insight" into the trial court's judgment. *Id.*, 2009-0571, 2009–0584, 2009–0585, 2009–0586, p. 78, 61 So.3d at 572; *See also Double NRJ Trucking, Inc. v. Johnson*, 2017-667, p. 7 (La. App. 5 Cir. 5/16/18), 247 So.3d 1125, 1131.

unambiguous. Thus, since La. C.C.P. art. 928 specifically mandates that a declinatory exception must be plead prior to a pleading seeking relief, we find that Esperanza waived its right to assert the declinatory exception of venue. Esperanza was mandated, pursuant to La. C.C.P. art. 928, to file the declinatory exception of improper venue prior to or along with the motion to set aside the preliminary default. When Esperanza failed to do so, it waived its ability to subsequently raise an exception of improper venue.

As to Appellants' second assignment of error, we deem it moot based on the aforementioned.

## CONCLUSION

For the aforementioned reasons, we conclude that the trial court erred in maintaining Esperanza's declinatory exception of improper venue. Thus, we reverse the trial court and remand this matter for future proceedings.

**REVERSED AND REMANDED**